UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 24 2008
Apr 24, 2008
Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 08 CR 07 - 2 |
| vs. | ) Judge Samuel Der-Yeghiayan |
| | ) |
| MICHAEL KROL | ) |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MICHAEL KROL, and his attorney, RICHARD ~~D. TRADLOR~~ C. LENG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with having corruptly accepted and agreed to accept cash from an individual, intending to be influenced and rewarded in connection with duties as an auditor for the Illinois Department of Revenue ("Department of Revenue"), in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(1)(B).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 3 of the indictment. Count 3 charges the defendant with having corruptly accepted and agreed to accept cash from an individual intending to be influenced and rewarded in connection with duties as an auditor for the Department of Revenue, in a series of transactions having a value of $5,000 or more, involving the Department of Revenue, a state agency that received in excess of $10,000 in federal funding in a twelve-month period, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## Factual Basis

6.  Defendant will plead guilty because he is in fact guilty of the charge contained in Count 3 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

With respect to Count 3 of the indictment, defendant Michael Krol ("Krol"), admits that, from in or about April 2002 to in or about September 2002, while he was employed as an auditor by the Illinois Department of Revenue ("IDR"), Krol corruptly accepted and agreed to accept cash from Dean Roupas ("Roupas"), who was an attorney, and Krol intended to be influenced and rewarded in connection with his duties as an auditor for the IDR, in a series of transactions having a value of $5,000 or more, involving the IDR, a state agency that received in excess of $10,000 in federal funding in a twelve-month period.

Krol knew that the IDR had rules that prohibited employees from accepting gifts, loans, or gratuities of more than $50, or any thing of value intended to influence an employee in connection with their job. Krol also knew that the IDR's rules prohibited employees from referring taxpayers to an attorney or law firm in connection with any official business involving the IDR, and that the IDR's rules required employees to report to the Department any offer of a bribe and any unethical practice by tax practitioners.

During the time period charged, Krol received approximately $10,000 from Roupas; Krol also received an additional $9,500 from Roupas in payments made in early 2002 and

2

late 2003, for total payments of approximately $19,500, as described below. Krol accepted that money intending to be influenced and rewarded in connection with the performance of his duties at the IDR. Krol used his position as a revenue agent to identify certain companies that were being audited by IDR, and to convince those companies to hire Roupas. Krol accepted money from Roupas in exchange for Krol's using his position to identify companies that were being audited and to refer those companies to Roupas. In addition, in certain instances, Krol used his position to help Roupas in connection with certain audits that Krol conducted.

In or about late 2001 or early 2002, Krol and Roupas agreed that Roupas would give Krol a percentage of the attorney's fees that Roupas received, in exchange for Krol's referring various companies to Roupas that were being audited by the IDR. Krol and Roupas concealed this agreement - and the payments that were made - from the Department of Revenue and from the companies that hired Roupas. Roupas paid Krol in cash in order to conceal the fact that Roupas was making such payments.

In or about December 2000, Krol performed an audit concerning one of Roupas's clients, La Copa. Krol initially said that the company would owe approximately $244,000, but the amount due ended up at $149,000. Krol pointed out to Roupas what he had done for Roupas's client. Roupas said he would take care of Krol [pay Krol], if Krol referred some cases to Roupas, which Krol agreed to do.

In or about October 2000, Krol participated in an audit of one of Roupas's clients, Burba. Food. Initially was set the amount due at $200,000, but reduced to $95,000.

In or about May 2001, Krol convinced a company, Liq. Unlimited, to hire Roupas to represent the company during an audit being performed by the IDR.

In or about September 2001, Krol worked on an audit of one of Roupas's clients, El Pai. Initially was set the amount due at $370,000, but went down to $242,000.

In or about December 2001, Krol convinced a company, Tuxpa., to hire Roupas to represent the company during an IDR audit. Krol performed that audit. Krol agreed to delay performing the audit until Tuxpa. had paid its taxes. Krol delayed the audit for approximately 8 months. Krol also gave Roupas a copy of a confidential internal report that Krol filed with the IDR Bureau of Criminal Investigation (BCI). In or about April 2002, while Krol was conducting this audit, Roupas paid Krol $5,000.

In or about May 2002, Krol referred a company, Lakev. Foods, to hire Roupas. During the audit, which Krol conducted, Krol gave Roupas an internal IDR letter concerning

the case. Moreover, Krol suggested to Roupas certain arguments that Roupas could use to rebut a fraud penalty.

In or about September 2002, Krol used his position as an auditor to convince a company, Kant. Tobac., which was being audited by the IDR, to hire Roupas to represent the company during that audit. The company hired Roupas.

In or about September 2003, Krol audited one of Roupas's clients, La Provid. Krol initially set the amount due at $85,000, but reduced that amount to $58,000. Krol gave Roupas a confidential internal referral letter that Krol had sent to BCI. In or about October, 2002, while Krol was conducting this audit, Roupas paid Krol $10,000 in exchange for Krol's referral of Kant. Tobac, and Krol's assistance in connection with the La Provid. audit.

In or about October 2003, Krol took over the audit of one of Roupas's clients, Ro's Jewelry. Krol assessed a tax of $600. Roupas was paid $2000 in attorney's fees and he paid Krol $1000 in October 2003.

In or about October 2003, Krol learned that one of Roupas's clients, El Pais., was going to be audited by the IDR. Krol told Roupas that he would try to get the audit assignment, which he did. In or about November 2003, Krol gave Roupas documents, which showed two possible tax liabilities, referred to as Plan A ($49,000) and Plan B ($19,000). Krol intentionally gave Roupas Plan A, which showed a higher tax liability, so that Roupas would be able to represent to his client that Roupas had successfully negotiate a lower tax liability for the client, as set forth in Plan B. Krol told Roupas that Krol had saved Roupas's client $30,000 because Krol and Roupas were friends. In or about November 2003, Roupas paid Krol $2,500 for Krol's assistance on that case.

In or about November 2003, Krol referred another company, Armit. Gold. Liq., to hire Roupas. Krol arranged to have that audit assigned to him. Krol also told another company, Choc. Min. Ma., to hire Roupas. Krol told Roupas that he was giving Roupas's name out to everybody.

In or about December 2003, Krol told Roupas that he had given Roupas's name to the owner of Ric.'s Food & Liq., who had just gotten an audit letter.

In or about December 2003, Krol received approximately $1,000 from Roupas in payment for future referrals. Roupas asked Krol for 10 cases in 2004, and Krol agreed that 10 cases would be good.

## Relevant Conduct

7.      Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:   As described above, Krol corruptly accepted money from Roupas, and Krol intended to be influenced and rewarded in connection with his work as an auditor for the IDR, which payments included approximately $5000 in or about April 2002; approximately $1,000 in or about October 2003, approximately $2,500 in or about November 2003, and approximately $1,000 in or about December 2003.

8.      The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

      a.      A maximum sentence of 10 years' imprisonment.  This offense also carries a maximum fine of $250,000.  Defendant further understands that the judge also may impose a term of supervised release of at least two years but not more than three years.

      b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.  The Court also may order restitution to any persons as agreed by the parties.

5

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in the indictment is 14, pursuant to Guideline §2C1.1(a)(1), because the defendant was a public official;

ii. Pursuant to Guidelines § 2C1.1(b)(1), the base offense level should be increased by 2 levels because the offense involved more than one bribe.

iii. Pursuant to Guideline §§ 2C1.1(b)(2)(A)(ii), and 2B1.1(b)(1)(C), the base offense level should be increased by 4 levels because the value of the payment,

6

namely approximately $19,500, including relevant conduct, was more than $10,000 but less than $30,000.

      iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

      v.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

7

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, certain components of those calculations – specifically, those set forth above in subparagraphs 11(b)(i), (ii), and (iii) – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g. Defendant understands that with the exception of the Guideline provisions identified in this subparagraph as binding on the parties, the Guideline

8

calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified in this subparagraph as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

12.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13.    At the time of sentencing, the government shall make known to the sentencing judge the defendant's efforts toward cooperation. If the government determines that the defendant has continued to provide full and truthful cooperation as required by this plea

agreement, then the government shall recommend that the court impose a term of imprisonment of 12 months in the custody of the Bureau of Prisons, and will advise the Court that under all of the circumstances, particularly in light of the defendant's agreement to cooperate and plead prior to the Seventh Circuit's decision in *U.S. v. Demaree*, 459 F.3d 791 (2006), and considering the Section 3553 factors, and the other cooperators' plea agreements in this case, the government believes that a sentence of 12 months is a reasonable one. Based on the parties' preliminary sentencing guidelines calculations, a sentence of 12 months is equivalent to the low end of the sentencing guidelines range in effect at the time of the offense and at the time the defendant began his cooperation and agreed to plead guilty. Other than the imprisonment portion of the sentence, the government is free to make any other sentencing recommendations the government deems appropriate. The government's recommendations are not binding on the Court. The defendant is free to recommend whatever sentence he deems appropriate.

14.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.  Regarding restitution, the parties acknowledge that it appears that no restitution is owed to the Department of Revenue. The defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order the defendant,

together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. The defendant agrees to pay restitution, jointly and severably with defendant Roupas, to the taxpayers identified above, who paid attorney's fees to Roupas, which Roupas split in part with the defendant, totaling approximately $19,500, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

17. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

18. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a

11

reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in the instant case.

21. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant

guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed.

14

Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, or the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

   c. **Waiver of the Statute of Limitations.** Defendant understands that he has the right to have the criminal charge in the indictment brought within five years of the last of the alleged acts constituting the specified violation. By signing this document, defendant knowingly waives any right to have the charge in the indictment brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charge in the indictment was brought.

23. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

15

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

25. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4/24/08

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
MICHAEL KROL  
Defendant

_____  
JACQUELINE STERN  
Assistant U.S. Attorney

_____  
RICHARD D. TRAINOR  
Attorney for Defendant